STONO MINES v. SOUTHERN STATES PHOSPHATE AND FERTILIZER CO.

CONTRACT CONSTRUED to mean plaintiff guaranteed phosphate rock sold to contain 58 per cent. bone phosphate of lime, if analysis fell below the guarantee a proportionate reduction in price would be allowed and defendant would not be required to accept the rock if the per cent. of bone phosphate of lime was so materially lower than the guarantee as to make the rock not reasonably suited for the purposes for which it was sold.

Before Dantzler, J., Colleton, March Term, 1906.   Reversed.

Action by Stono Mines against Southern States Phosphate and Fertilizer Co.   From judgment for plaintiff, defendant appeals.

*Messrs. Wm. H. Fleming* and *Howell & Gruber,* for appellant.   The latter cite: *As to rules of construction:* 5 Rich., 196; 33 S. C., 215; 17 Ency., 18.   *As to implied warranty:* 12 S. C., 586; 40 S. C., 31.

*Messrs. Mitchell & Smith* and *J. G. Padgett,* contra, cite: *As to construction of contract:* 14 S. C., 165.   *Contract cannot be changed by extraneous matter:* 54 S. C., 343.   *Charge should conform to issues:* 40 S. C., 234; 49 S. C., 303; 46 S. C., 219; 74 S. C., 305.

March 18, 1907.   The opinion of the Court was delivered by

Mr. Justice Gary.   This is an action to recover the amount alleged to be due for phosphate rock, sold and delivered to the defendant in pursuance of the following contract:

"Sold to the Southern States Phosphate and Fertilizer Company, of Augusta, Ga., twelve thousand (12,000) tons of kiln dried phosphate rock, guaranteed to contain 58 per cent. bone phosphate lime, to be delivered f. o. b. cars, Savannah, Ga., delivery to begin July 1st, 1904, and continued thereafter at the rate of 800 to 1,000 tons per calendar month, except when prevented by water, fire, storm or such other providential causes—price, $3.75 per ton, 2,240 lbs. f. o. b. cars Savannah, Ga., Terms, all rock to be shipped during months to be paid for, in cash, by 10th of succeeding month—Southern States Phosphate and Fertilizer Company to have privilege of giving their four months' note with interest at 6 per cent.

"To obtain a proper sample and analysis of the phosphate rock shipped, the following rule to cover each party to this agreement: Stono Mines to draw a sample from each wheelbarrow of rock, while loading cars at their plant, placing same in barrels, and these samples to be thoroughly mixed, divided and subdivided until a fair average sample can be obtained, which shall then be submitted to their chemist for analysis. The same as described above to be done by Southern States Phosphate and Fertilizer Company, at their Savannah works, while receiving each month's shipments and their sample to be submitted to their chemist. If the results of the two chemists are within one per cent. of each other, the average to be taken as the official analysis; if over one per cent. difference, a third chemist to be selected, and the average of the two nearest results to be taken. Should this analysis fall below 58 per cent. bone phosphate of lime, a reduction proportionate to 58 per cent. and the price $3.07.5 to be allowed Southern States Phosphate and Fertilizer Co."

The defendant set up two defenses, in substance as follows:

"(1) That the plaintiff had contracted with the defendant, that the phosphate rock sold by the plaintiff to the defendant, should contain not less than 58 per cent. bone phosphate of lime, and that the phosphate rock furnished, contained considerably less bone phosphate of lime than 58 per cent. as guaranteed by plaintiff; and

"(2) That the phosphate rock furnished the defendant by plaintiff contained such a small per cent. of bone phosphate of lime, that the same was unmerchantable and valueless, and the defendant was put to great loss and expense in being forced to go into the market, and buy phosphate rock, containing the necessary per cent. of bone phosphate of lime, in order to manufacture commercial fertilizer for its customers, and fill its orders, to its damage $6,862.15, for which amount defendant made counterclaim, and asked for judgment."

The jury rendered a verdict in favor of the plaintiff for $5,205.62.

The defendant appealed upon numerous exceptions; they however raise practically but two questions:

1. That His Honor, the presiding Judge, was in error, in refusing to charge the jury that the plaintiff, under the terms of the contract, warranted that all phosphate rock sold to the defendant, should contain 58 per cent. bone phosphate lime, and the defendant was not bound to accept that which contained a smaller per cent.

2. That he erred in refusing to charge, that the plaintiff could not require the defendant to accept and pay for any rock, not reasonably suited for the purpose for which it was intended, if it contained less than 58 per cent. bone phosphate of lime.

It will thus be seen that all the exceptions relate to the construction of the contract.

Our construction of the contract is, (1) that the plaintiff guaranteed, in express terms, that the rock should contain 58 per cent. bone phosphate of lime; (2) that if the analysis fell below 58 per cent. bone phosphate of lime, a reduction proportionate to 58 per cent. and the stipulated price, would be allowed the defendant; and (3) that the defendant was not bound to accept the rock if the per cent. bone phosphate of lime, which it contained, was materially less than 58 per cent.; in other words, if it was not reasonably suited for the purpose for which it was sold.

This is the only interpretation that will give full force and effect to all the provisions of the contract, and is in harmony with the manifest intention of the parties, that there should be a guaranty; with the fact that the parties had in mind a small difference between 58 per cent. and that contained in the rock delivered; and finally with the fact that if the difference was material, it would defeat the object of the contract.

It is, therefore, the judgment of this Court that the judgment of the Circuit Court be reversed, and the case remanded to that Court for a new trial.